The next case today is Janito de Carvalho v. Merrick B. Garland, Appeal No. 20-1711. Attorney Realmuto, please introduce yourself for the record and proceed with your argument. Thank you. May it please the Court, Trina Realmuto on behalf of Petitioner Juanito de Carvalho. With the Court's permission, I'd like to reserve two minutes for rebuttal. Yes, you may have it. Thank you. The threshold issue in this case is the validity of the former Attorney General's decision in matter of Y.L. If the Court agrees with Petitioner that Y.L. is invalid under Chevron, it need not reach the other issues in this case, such as the cat clean. Y.L. established a presumption that all drug trafficking offenses are particularly serious. Under Y.L., an individual facing a probability, even a certainty, of persecution or death forfeits protection under the withholding statute 8 U.S.C. 1231b3. Counsel, let me move this along with a couple of questions, please. The first is, your briefs make two arguments. The first is that matter of Y.L. is contrary to the statute, and the second is, under Chevron, it fails. I take it you are now simply arguing Chevron. Now, next question. Suppose we disagree with you and we take the same view that the Ninth Amendment is contrary to statute or fails the Chevron test. It is my understanding from your briefs that if that is done, then you do agree with the government that the matter should be remanded to the Board. Is that correct? That is correct. Both parties agree that the I.J. and the record is devoid of that. Okay. Now, the government, your notion of a remand is actually a bit different than the government's notion of a remand. We don't have to adopt the government's the limits on a remand. If we were to remand, what is it that you think should be remanded? Well, so we certainly disagree that Y.L. is a valid test, and I would love to address your Honor's comment about Miguel Miguel in just a second, but to answer your question on remand, you know, we would give Mr. De Carvalho, to hope to have him, we would submit that he should at opportunity to rebut the presumption. Now, because the test is so difficult, you know, so many others have not passed it, we wanted to bring to this Court the concept that the Court should strike Y.L. and remand to the Board to apply a balancing test with factors that are regulations. The Court cannot suggest to the BIA that matter of Y.L. be reconsidered in light of the new administration change circumstances, so on and so forth, but that the Board, a majority of the Board itself, could request that, or the Chairman of the Board could request reconsideration. Sure, but this Court certainly has a role to play in addressing under Chevron the validity of a test, whether it be... Yeah, you're back to the first issues. I'm asking you about the third of your arguments, which is the scope of the remand. I think that, you know, there's a bit to the Chevron Step 1 and 2 argument that should be fleshed out, but with respect, you know, if you're going to remand, it doesn't have to be the BIA that asks for reconsideration of Y.L. All that has to happen is this Court could, you know, strike down the test under Chevron 1 or 2, and then... What is the basis for this Court? Right, in that situation, you know, it would be lovely if the Board decided to ask the Attorney General to reconsider it, but in the absence of that happening, and it hasn't happened for 20 years, and we have a record of no one being able to rebut that presumption, we think it fairly splits within a Chevron analysis, and so... Okay, so what's your argument? All right, so my Chevron argument is that this is an insurmountable test. You have to meet six criteria, and in addition, unusual circumstances. It's a one-strike-and-you're-out test. If any requirement is not met, you lose protection, but it is also an outlier. It is markedly different from the multi-factor balancing tests that the Board has adopted and this Court has previously endorsed. In fact, YL reverses matter of SS, which was a unanimous, a unanimous en banc decision by 15 BIA Board members interpreting the same withholding statute and requiring a multi-factor balancing test. In the nearly 20 years since YL's been on the Book, we haven't been able to find, and Respondent doesn't cite, a single Court decision in which a non-citizen has rebutted the presumption. Now, Your Honor raised Miguel-Miguel, and the linchpin of the Miguel-Miguel analysis, that decision for the Ninth Circuit came down just a couple years after YL, and the Court said at page 947, presumably, YL will be interpreted consistent with the rebuttal presumption if there will be some cases in which the exception applies. Yes, but some cases doesn't necessarily mean Federal Court of Appeals decisions, and the language of matter of YL does not create an irrebuttable presumption. It creates a rebuttable in which the petitioner rebutted it. It's more than that, Your Honor. It's what happened here. It's that the IJ and the BIA are treating this as a per se rule and rubber stamping drug trafficking offenses as particularly serious crimes. But even if you don't accept that, even if you say it's rebuttable on its face and that's enough, that's all we're going to look at, you still have to go to Chevron. I believe Judge Lopez may have a question for you. Explain to me, how do you envision matter of YL playing out in practical terms? My understanding is that you have these six factors that are identified. They're kind of like a threshold analysis, and even if you're successful in meeting those six factors, then you still have to establish that the circumstances are extraordinary and compelling in order to establish that you might now be eligible for consideration. How do you see that playing out? It sounds in essence impossible to meet. It's pretty hard to avoid that conclusion. I know you agree with that, but as a practical matter, how do you see playing out in a real hearing? I see immigration judges just finding one factor and stopping the analysis and saying you're not going to meet it, so let's move forward. But the problem is the factors that are identified in that test are not consistent with the purpose of the withholding statute. Now in doodling, the Supreme Court said immigration decisions have to be tied to the purpose of immigration laws, and here the purpose of the withholding statute is non-refoulement. It's protecting people from being deported to places that they face persecution, and there's just no purpose served by eliminating this entire class. Suppose the Attorney General simply said anyone convicted of any violation of the crime would be a per se rule. That would be impermissible because Congress knew how and did in fact create a per se rule. It defined per se particular serious crimes. It seems to leave the Attorney General the discretion here to specify other particularly crimes. Well, so with respect, your honor, and when we read that sentence of the statute is determining that, you know, the Attorney General's authority to determine that notwithstanding the length of this sentence, the person, you know, he can determine if somebody's been convicted of a crime. It didn't say rebuttal restrictions were okay, but it also said you could make a determination. What do we understand that to mean? We understand it to mean a case-by-case basis with multi-factor test because that's the backdrop on which Congress was legislating. Okay, counsel, Judge Kayada has further questions. I think you'd have to convince us that that sentence that says that the foregoing sentence will not preclude the Attorney General from determining that notwithstanding the length of the sentence imposed, an alien has been convicted. You would have to convince us that the only reasonable way to read that is as a sort of ad hoc case-by-case determination, and the only textual hook you point to is the use of the word an, but an is in the prior sentence that Congress put, which is clearly per se, so I'm having trouble understanding the textual argument that would not only support your side but would lead to the conclusion that yours is the only reasonable reading of that. Sure, we also pointed the word determining and in that meaning a case-by-case analysis, but assuming that you think that we lose at Chevron step one, right, it doesn't mean that you don't get to look at the test at all. It just means that you see the statute as ambiguous with respect to whether or not there can be a rebuttable presumption, and then you have to go to Chevron step two and look at that test. That's why I said is at Chevron two do we find that their resolution, the Attorney General's interpretation of that language, is reasonable. Right, and we submit that it's not, both because of the absolutist nature but also because it precludes consideration of factors that are historically relevant to particularly serious crime analysis, factors like coercion, duress, mental illness. These are things that have always been considered in a particular serious crime analysis, and this is the only outlier test that doesn't allow for consideration of those factors. Counsel, even if we do not accept, I think this is your initial argument, really, that this is a creation of another per se rule for drug trafficking crimes, but if we do not accept that, you still argue that under step two of Chevron, that for multiple reasons, this so-called rebuttable presumption is unreasonable, that it's arbitrary and capricious, and still difficult to reconcile with the statute. Is that correct? So you can still win from your point of view, even if we reject your proposition that this is, in effect, a categorical rule. Is that correct? Correct, absolutely. We think ours should, you know what, yes. Okay, let me ask my colleagues if they have further questions of you at this point. You have reserved two minutes. Okay, we'll hear from your opponent. Thank you, Attorney Realmuto. Please mute your audio and video at this time. Attorney Robinson, please introduce yourself on the record and proceed. Of course. Good morning, and may it please the court. Marie Robinson on behalf of the Attorney General, and thank you for having me, Your Honors. Your Honors, as you outlined, I'm requesting that the agency to further explain whether and how matter of Y.L. applies in this case, and if the petitioner has rebutted the presumption, he could then seek withholding before the agency. The government's position is that matter of Y.L. is a well-reasoned Attorney General decision. It warrants deference. It's been upheld in unpublished decisions by three circuits, the third, the second, and the sixth, and it was upheld. Excuse me. I'm sorry. Go ahead. Your opponent makes the argument that there are no court of appeals decisions that would suggest that there's been any success in meeting the requirements of this so-called rebuttable presumption, and you say, well, that's an incomplete account, that there could well be successful, and that would necessarily find their way into court of appeals decisions. Can you say to us, based upon your knowledge, that there have been any instances where there have been successes? You talk about the theoretical possibility, but can you tell us whether there have ever been, to your knowledge, given your involvement in, I gather, cases like where this presumption has ever successfully been rebutted so that somebody became eligible for the withholding analysis? Your Honor, I would say yes, and I would say that one has only to look at other state statutes to see where that could potentially apply. So, for example, Virginia has a misdemeanor possession with intent to distribute. Just looking at the statute in and of itself, you could see how there could be cases where someone could meet the six YL factors, where it is a very small quantity, where it's a modest amount of money. For example, a possession with intent to distribute marijuana, where the person has a small amount of marijuana. The other thing I think that has not been fully fleshed out in this, Your Honor, is that if someone is found to rebut the presumption and the agency upholds that determination on appeal, the Office of Immigration Litigation, the Attorney General, represents the agency's decision. So, the number of cases where the Department of Homeland Security, for example, would lose below and be able to bring this before the circuit court is necessarily quite limited. But can you point to any BIA decisions or IJ decisions in which someone was found to have satisfied the presumption? I can't at this moment, Your Honor. I can offer to supplement the record. You're saying in 20 years we have no evidence of anyone ever having been found by any IJ anywhere in the country to have satisfied this presumption? So, Your Honor, I'm saying that today I do not have it. If the court is interested, I can supplement. Well, after working on this case for the last half year and briefing the circuit court of appeals, you've come up with nothing? Yes, Your Honor. And so, isn't, as a practical matter, this either per se or so close to per se that the difference is meaningless? I wouldn't say that, Your Honor. I would say that the rebuttable presumption recognizes the seriousness of drug trafficking and it sets out factors and the factors themselves are not unreasonable. The factors themselves are, in an essence, an attempt to mitigate the inherent dangers of drug trafficking. So, and Congress expressly delegated this authority to the Attorney General to designate as particularly serious crimes that fall outside the per se rule. So, don't you really have to defend, and I don't know if you are or aren't, let's assume this is, suppose the Attorney General just said drug trafficking offense under federal law, period. Would that be defensible? I would say, for the most part, yes, Your Honor. The board has, I'm sorry? You said the most part. What part not? I'm sorry, Your Honor. I would say yes. That is the, I think that the Attorney General technically could rely on prior precedent and say there are certain sectors of crimes. I mean, for the most part, you know, entirely. Child molestation offenses are going to be deemed particularly serious. So, excuse me, so when Congress has preclude any eligibility for withholding and then says that outside of that category that the Attorney General can determine whether an alien has been convicted of a particular serious crime, you're suggesting that pursuant to that delegation, the Attorney General could just say, well, as a categorical proposition, I'm going to do what Congress did not do. I'm going to say that drug trafficking crimes are categorical exclusions. That would be consistent. I would say, Your Honor, that that's not what happened here. I would say the statute does say the previous sentence shall not preclude the Attorney General from determining that not withstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime. So, moving from what may be a hypothetical rewriting to this actual case and matter of I think may not have been clearly spelled out by the agency, which is the role of the immigration judge here and whether the immigration judge has some obligation to identify matter of Y.L. at a minimum and perhaps more than that, to identify the content of matter of Y.L. so that the alien has a fair opportunity to try to rebut the presumption. As I read your request for remand, it would not preclude the agency from addressing that issue. It might well be inherent in some of the questions that you want remanded. Have I understood your position correctly? Right. So, I would say that, Your Honor, is correct. It's unclear here exactly how the agency applied matter of Y.L. The petitioner did have a conviction on the same offense date for possession of a firearm. So, it is entirely possible that the agency could find that's a threat of violence. I would be speculating. But, and I would say that also is what distinguishes this case to some extent from on the face both of the conviction records, the per se bar likely applied, and also the entire basis of petitioner's asylum claim in that case was that he had engaged in drug trafficking. All right, and you have heard my delicately put suggestion that perhaps the Attorney General would like to reconsider matter of Y.L. in light of the practical experience over 20 years. In fact, we're operating in a bit of a deficit of information here about whether any immigration judge has ever found the presumption to be met. I take it that in terms of the scope of remand, you are also not saying that that matter is totally beyond the power of the BIA to reconsider. So, Your Honor, the problem that I can see with that is that the board acts as the Attorney General's designees. Yes, I know that, but the board has retained the power in its own regulations under certain circumstances to refer a matter back to the AG without in any way suggesting the appropriate outcome of the AG's possible reconsideration. Yes, Your Honor, but I would also say that it is entirely possible that the board could look at the fact that this case has been upheld by four other circuits and applied by the first, the tenth, and the eleventh, and deem that that was not necessary. Yeah, okay. Do you agree that for many, I don't know, 20 years or more until this, until matter of Y.L., that the practice was to do a case-by-case analysis with a sort of multi-factor consideration as to whether the IJ, they were dealing with a particular serious crime. I mean, this was very much an innovation that countered long-standing practice, and indeed, I think you indicated, actually, perhaps it was opposing counsel, actually overruled previous decisions of the BIA that the case-by-case analysis was the appropriate one. Is that a fair statement of the history that preceded the adoption of matter of Y.L.? Well, yes, Your Honor. So, before matter of Y.L., then there was the matter of Frantescu factors. Right, right. In that case, the board looked at a variety of factors. I think that the attorney general in the decision, and part of the reason that the attorney general retains the referral authority is an effort to have consistency in litigation the same way I believe that this court does as well, to some extent. Isn't there, I'd like to follow up quickly on Judge Lynch's question, isn't there an incongruity here that's developed over time? If the attorney general had intended to promulgate what was in practice a per se rule, then he presumably would have, he or she would have just said it. So, can't we infer that when the attorney general promulgated a six-factor presumption, that the attorney general was presuming that the presumption would in some circumstances be satisfied? And yet we now know after 20 years of experience that no one here can point to any instance where it's ever been satisfied, which would seem to show that there's an incongruity between the way this has worked in practice and the way it was intended to work by the attorney general in practice. And so that would be a reason why the board might want to ask for clarification, reaffirming, or whatever. I mean, technically, Your Honor, you could say that. I would say, I think that the factors that are laid out, the small quantity, the modest amount of money, the absence of any transnational criminal organization, the absence of any adverse or harmful effects, it recognizes a lot of the issues that were coming up both before IRA-IRA and also after the congressional reforms that occurred. So, matter of while, I understand the court's position, but my position is that this did not create a per se rule. There is a possibility that someone could rebut this. And once it's rebutted, then you can raise the other arguments and the factors that you would like to have considered. Okay. Do I understand correctly that the change that Judge Lopez questioned you about in matter of while was as a direct result of the congressional enactment? Okay. So, sorry. The court's indulged in this one minute. So, the board first established the particularly serious crime determinations in matter of Frantescu, and then Congress amended the Immigration and Nationality Act to make all aggravated felonies particularly serious crimes, which effectively precluded case-by-case analysis. The Congress then, that same year, again, eliminating the categorical approach and creating a particularly serious crime presumption that could be rebutted if it was necessary basically for international law. And then, that same year, Congress amended the INA again. So, that's where we have the role today. Yeah. It seems to me the present statute could be viewed as a kind of hybrid, which incorporates. So, in the history, you've had the kind of case-by-case analysis. You've also had categorical rules. This seems to be, the present statute seems to be a hybrid. It creates, in part, a categorical rule for certain types of crimes. And then, it delegates to the Attorney General the right to make determinations about other particularly serious crimes, sort of drawing upon that history, which was largely a case-by-case analysis. I think an argument can be made that that provision, which now gives the Attorney General the right to make other determinations, sort of draws upon that long case-by-case history. So, it seems to be, I would suggest this is kind of a hybrid that reflects that history, with this clause drawing upon the case-by-case analysis. I assume you would not agree with that. Well, Your Honor, I would say that I would characterize it almost as a reaction to what the Attorney General was seeing coming out of the immigration courts, and that he looked at drug trafficking as a particular issue and said, in general, regardless of the length of sentence, regardless of whether it's an aggravated felony or not, this is particularly serious. Here are the mitigating factors, where if these are met, then we depart from that. And I would say those factors are reasonable. And, I mean, it accords with congressional recognition that drug trafficking is particularly serious. Are there any further questions of Government counsel? I have none. No. Okay, thank you. Thank you. Attorney Robinson, please mute your device at this time. Attorney Realmuto, you have two minutes for rebuttal. Please reintroduce yourself for the record. I am Trina Realmuto for Petitioner Juanita de Carvalho. I have a couple points I'd like to make in response to opposing counsel and the questions to her. The Attorney General's decision is just reversing what 15 unanimous board members said when they interpreted what Congress did in 1997 to allow for the Frank Teskew factors to continue. But so what? They did so in light of changes by Congress and in light of experience. Therefore, what is the argument? That it's irrational because it changed prior precedent? Well, I'll just put the policy justifications are laid out in our brief. I mean, we think that those same justifications... I don't get the legal point. Plethora. But, I mean, if we're talking about policy... And move on, move on. What are your other points? Opposing counsel said that this test has been upheld. Only the Ninth Circuit has addressed the Chevron argument. Just because a federal court applies the test and finds in favor of the government doesn't mean it's upholding Y.L. It's upholding the application, not the validity. Second, she posed an example of a Virginia statute. Well, like anybody, a person who sells five dollars of marijuana to a friend or the friend who delivers the buyer, the courier, they're all not peripheral players. They can't meet the test. So that hypothetical doesn't work. DHS appeals these decisions. You know, they're free to appeal these decisions. So, I mean, I think to her point that they're not appealed. I think that there's just no support for that. DHS appeals to the BIA all the time. I'm sorry, you're saying there are satisfied? Opposing counsel... I'm asking you. I don't know of any decisions where that test has been satisfied. By anyone, including immigration judges? Correct. Okay. And so my point was only that, you know, if there were those, DHS would be free to appeal, as they do. Well, uh, do you know that, well, if you don't know whether any immigration judges ever allow this, then you don't know whether the question has been put to DHS whether to appeal from such findings. The one follows from the other. Just none of us know. Well, the government knows, right? A to the whole scope of decisions. There's privacy reasons. We don't have access to those cases. And so we don't know. But the government would certainly know. And they haven't presented any evidence thus far. It's expired. So make your final point. I do have another question. Please go ahead. Make your... A very quick point with respect to the hypothetical posed about whether or not if the Attorney General had said drug trafficking convictions are particular serious crimes, well, that would violate the statute, because there's only one type of particular serious crime. And I would refer the court to the Ninth Circuit's decision in Blandino for that. Counsel, we have not discussed the Convention Against Torture issue at all. And I understand it's a little late to get into that. But I do want to pose this question. If we were to address that question, and if we were to conclude that there was no infirmity in the way in which the BIJ and the BI handled that, and yet there has to be a remand because of the mishandling a matter of a while, what effect would that conclusion about the Convention Against Torture claim have on the remand and the likelihood of any success on a remand in light of the disposition of that part of the case? What would be the relationship between those? Well, thank you for that question, Your Honor. I think analytically, it wouldn't make sense for the court to address the higher threshold of relief when we haven't yet established if Mr. DeCarvallo is eligible for the lower threshold of relief. So, to the extent that there are findings about Kat, those would only apply to the Kat claim where the question here is, you know, is he eligible for withholding? And so, we don't see a reason why the court would have to address the Kat claim if it remands on is he eligible for the lesser form of relief? You're not answering the question. Suppose that, well, I defer to Judge Lopez who can ask it again. I think it would waste judicial resources because you'd be pontificating about the Kat claim when if in fact the withholding claim comes in, you know, if it gets remanded, there would be a remand to the IJ. You said earlier in your argument that if we were to accept your argument that Matter of Y.L. is really, we find it unreasonable, invalid, that it should go back. We don't have to address the Convention Against Torture claim. I'm posing the question that we do not accept your argument about Matter of Y.L. We then go on to address the Convention Against Torture claim. And suppose we were to say we think there was nothing wrong with the way that was handled. So, that's now our ruling. My question, what effect would that have on the remand to properly address the rebuttable presumption? You now seem to be saying that even in that scenario where we just remand to properly address that issue, we should not go on to address the Convention Against Torture. Is that what you're saying? I think that if the court remands to address whether the presumption could be met, which we think is difficult, then the Kat claim decision would be on a higher standard. And I think that generally on these remands, the board would have to then remand the case back to the immigration judge. And, you know, in order to develop the Y.L. test, then the immigration judge would take more... Counsel, I'm sorry, I'm not hearing the answer. Yes or no? I'm struggling a little. No, listen to my question, please, before you talk over the judges, please. Assume we reject your attacks on matter of Y.L. Assume we remand. Assume we address the Kat claim and we reject the argument that the agency decision was unfounded. Does that leave any possible relief for your client on remand? Yes or no? Um, yes, to the extent that we supplement the record and bring in evidence that this court didn't rule on in its decision. Okay, thank you. Yeah, thank you. May I conclude? No, we've heard you. Thank you. Thank you, that was very helpful. Thank you. That concludes argument in this case. Attorney Real Muto and Attorney Robinson, you should disconnect from the hearing at this time.